## Carter Coal Company, et al. v. Collins.

(Decided February 17, 1915.)

### Appeal from Knox Circuit Court.

Damages—Settlement—Validity.—Where in an action for damages for personal injuries defendant pleaded a settlement, evidence examined, and held that plaintiff freely and voluntarily made the settlement at a time when he was mentally capable of contracting, and knew and fully appreciated the effect of the release which he signed, and that the settlement was not obtained by fraud; the court, therefore, should have directed a verdict in favor of the defendants.

P. D. BLACK and BLACK, BLACK & OWENS for appellants.

GOLDEN & LAY for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

In this action for damages for personal injuries Gillis Collins obtained a verdict and judgment against defendants, Carter Coal Company and Pete Bays, for the sum of $600. Defendants appeal.

At the time of the accident plaintiff was employed by the company as a slate loader. The company's cars were propelled by an electric motor. The motor was in charge of a motorman and a coupler. One of the coupler's duties was to wind a reel used in propelling the motor. On the occasion of the accident plaintiff claims that the regular coupler had been sent to another part of the mine and he was directed by the foreman to take his place. While on the motor performing the work of the coupler under the foreman's direction, he was caught between the motor and a cross timber and injured.

Several weeks after the accident he made a settlement with the company by which he accepted $150 in full of his claim for damages. Plaintiff attacked the settlement on the ground of fraud. The validity of the settlement is the only question which we deem it necessary to consider. On this question plaintiff's evidence is as follows:

A few weeks after the injury, and while he was on crutches, Mr. Marsee, a representative of the company, came to plaintiff for the purpose of making a settlement. He first offered plaintiff $100, and then increased the sum until his final offer was $150. Plaintiff declined to accept the $150, but was willing to take $200. Marsee said: "I believe you are making a mistake in not taking it. I am satisfied that is all we will be out, just attorney fee, and I had rather give it to you than the lawyers; you need it worse than they do, and if you want it, I will give you the $150.00." He further said that the company had beaten cases as bad as plaintiff's, and even worse. That it might be if the case were tried in the local court plaintiff would get a judgment, but they were not going to allow it to be tried there. They were going to take it to the Federal court. At the same time he showed plaintiff some affidavits and stated that they were going to beat him. In addition to this he stated that he would not give plaintiff any wrong advice if he knew it. He believed the best thing for plaintiff to do

was to take the $150. At that time plaintiff was in bad shape about getting around, and did not have any money to bear the expense of going to the Federal court. Some time later a notice was served on plaintiff stating that the defendants would, on April 7, 1913, file in the office of the clerk of the Knox Circuit Court a petition and bond for the removal of the case to the United States Court for the Eastern District of Kentucky. After that plaintiff began to think the question over, and concluded from what he had heard Mr. Marsee say, and from the fact that defendants were going to take the case to London, it would be best for him to accept the $150. After that he went to see his attorney, but did not remember discussing the settlement with him. He never at any time asked for more than $200. Later on he sent his wife to the company to tell them that he was willing to settle on the basis of $150. In the meantime, he had not seen Marsee any more in regard to the settlement. He received word from Mr. Luttrell, the superintendent of the coal company, to come to Warren. When he left for Warren he had determined to take $150. When he came to Warren the release was prepared and signed by him, and the $150 paid to and accepted by him.

It will be observed that this is not a case where the settlement was made soon after the injury, and plaintiff claims that he was suffering so that he did not have sufficient mental capacity to understand and appreciate the effect of the settlement. It is not a case where it was claimed that the amount paid represented only lost time. It is not a case where any misrepresentations were made to the plaintiff. It is not contended that the affidavits of the workmen who were present were not sworn to by them. Plaintiff's whole case is predicated on the idea that the claim agent represented himself as a friend of plaintiff and advised him to make the settlement, and plaintiff, by reason of these statements, and the further fact that defendants intended to take the case to the Federal court and thus involve an expenditure of money which he did not have. As the coal company was organized under the laws of the State of Delaware, and as plaintiff was a resident of the State of Kentucky, it at least had the right to file a bond and petition for removal to the United States Court on the ground that the controversy was between citizens of different States. An exercise of that right cannot be regarded as a fraud on

plaintiff. Furthermore, plaintiff did not accept the settlement at that time. He waited several weeks. Never at any time did he claim more than $50 in excess of the amount agreed on in the settlement. It was long after his talk with Marsee that he made up his mind to accept the $150. Without any further insistence or negotiations on the part of any representatives of the company, he sent his wife to notify the company that he was willing to accept the $150. He left home and went to the company's office, determined to accept that amount. When he arrived he asked for more, but the company's superintendent declined to give it. Thereupon the release was signed and the money paid to and accepted by him. He was not deceived as to the amount or the purpose for which it was paid. He did not sign the release in ignorance of its conditions. No misrepresentations of any kind were made to him at the time the settlement was made, and the mere fact that several weeks before Marsee advised him as a friend to make the settlement, or stated that they had beaten worse cases than his, or threatened to take the case to the Federal court, is not sufficient evidence of fraud to justify the submission of that question to the jury. Taking plaintiff's own statement, and disregarding, as we must do, all the other evidence bearing on the question of the settlement, he shows conclusively that he freely and voluntarily made the settlement at a time when he was mentally capable of contracting, and knew and fully appreciated the effect of the release which he signed, and that the settlement was not obtained by any fraud on the part of the representatives of the company. There being no evidence that the settlement was obtained by fraud, it follows that the trial court should have directed a verdict in favor of the defendants.

Judgment reversed and cause remanded for new trial consistent with this opinion.